(No. 14953.—Order affirmed.)

THE PEOPLE *ex rel.* Orval Lutz, Appellant, *vs.* KERSEY FRANCE *et al.* Appellees.

*Opinion filed October 28, 1924.*

1. QUO WARRANTO—*what is proper practice upon presentation of petition to file information.* Where a petition for leave to file an information in the nature of *quo warranto* is presented and shows *prima facie* cause for filing the information the court may act upon the petition or may enter a rule *nisi* upon the respondents to show cause why the information should not be filed, and in response to such rule the respondents may show by counter-affidavits any sufficient reasons for denying the petition.

2. SAME—*filing of information rests in discretion of court.* The granting or withholding leave to file an information in *quo warranto* rests in the sound discretion of the court to which the application is made, even though there is a substantial defect in the title by which the office or franchise is held.

3. SAME—*when court may require information to be filed.* If the facts shown by the respondents in answer to the rule to show cause why an information in the nature of *quo warranto* should not be filed are disputed, or if the answer presents new and doubtful questions of law, the court may require the information to be filed, in order that questions at issue may be determined.

4. SAME—*when court may decide case on presentation of petition.* Where the facts are not disputed and the questions of law involved may receive as full and careful consideration upon the original application for leave to file an information as if the rule to show cause for filing were made absolute and the information were allowed to be filed, such questions may be thus determined in the first instance without making the rule absolute.

5. SAME—*allegations of petition should state facts and not conclusions.* A petition for leave to file an information in the nature of *quo warranto* should not state conclusions but should state facts sufficient to satisfy the court that there are competent grounds for the proceeding, and should be full and positive and drawn in such manner that perjury may be assigned thereon if any material allegation contained therein is false.

6. SCHOOLS—*act of May 10, 1921, validating elections for community high school districts, is valid.* The act of May 10, 1921, (Laws of 1921, p. 797,) validating irregularities in elections for the organization of community high school districts, is not unconstitutional. (*People* v. *Opie,* 301 Ill. 11, followed.)

7. SAME—*when a community high school district is sufficiently compact.* A community high school district is sufficiently compact and contiguous, within the meaning of the law, where the greatest distance from the school to any part of the district does not exceed seven miles and where the district contains good public highways, unobstructed by streams that interfere with travel.

8. SAME—*general rule as to when school district is "compact."* The word "compact," as used in statutes relating to school districts, means concentrated or close to a certain center, and the territory of a community high school district is compact and contiguous, in the constitutional sense, when it is so closely united and so nearly adjacent to the school building that all the children residing in the district may conveniently travel from their homes to the school building and return the same day in a reasonable length of time and with a reasonable degree of comfort.

APPEAL from the Circuit Court of Fulton county; the Hon. WALTER C. FRANK, Judge, presiding.

FLOYD F. PUTMAN, State's Attorney, and FLACK, FLACK & KERMAN, for appellant.

E. L. WEBER, HARVEY H. ATHERTON, and GLENN RATCLIFF, for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Floyd F. Putman, State's attorney of Fulton county, presented to the circuit court of said county, on March 14, 1921, his petition on the relation of Orval Lutz, a citizen,

resident and tax-payer in territory constituting Community High School District No. 226, in the counties of Fulton and McDonough, for leave to file an information against the persons acting as a board of education of that district, challenging the legal existence of such district and calling upon them to show by what warrant and authority they attempted to hold office as a board of education. The petition was verified by the affidavit of Lutz and gave a copy of the notice of an election to organize the district, but alleged that the county superintendent of schools did not post ten copies of said notice ten days prior to the election and failed to comply with the statute in that regard. It alleged that the territory comprised within the pretended district did not consist of compact territory, but a part of it two miles in width and five miles in length extended west from the main body of the territory, forming an "L;" that some parts of the territory were nine miles from the village of Table Grove, where the school was located; that much of the territory was nearer to Adair, in McDonough county, than to Table Grove, and Adair was the community center of much of the territory; that there was located in Adair a community high school; that both men and women voted at the election, and separate ballot-boxes were not kept for men and women but the votes were commingled and counted together; that there were 243 votes cast for the community high school and 29 against it, and that the territory was of such form and so situated as not to satisfy the constitutional requirement for an efficient system of free schools.

When such a petition is presented to a court, if it shows *prima facie* cause for the filing of an information the court may act upon the petition or may enter a rule *nisi* upon the respondents to show cause why the information should not be filed, and in response to such rule the respondents may show by counter-affidavits any sufficient reasons for denying the petition. (*People* v. *Waite*, 70 Ill. 25; *People* v.

*Moore,* 73 id. 132; *People* v. *Golden Rule,* 114 id. 34; *People* v. *McFall,* 124 id. 642.) The granting or withholding leave to file an information rests in the sound discretion of the court to which the application is made, even though there is a substantial defect in the title by which the office or franchise is held. (*People* v. *Waite, supra; People* v. *Moore, supra; People* v. *Callaghan,* 83 Ill. 128; *People* v. *North Chicago Railway Co.* 88 id. 537.) If the facts shown by respondents in answer to the rule are disputed, or if the answer presents new and doubtful questions of law, the court may make the rule for the information absolute, in order that questions at issue may receive a full and final determination. If, however, the facts are not disputed, and if the questions of law involved may receive as full and careful consideration upon the original application as if the rule to show cause were made absolute, such questions may be thus determined in the first instance without making the rule absolute. (*People* v. *McFall, supra.*) The petition must recite facts,—not mere conclusions of the pleader,—sufficient to satisfy the court or judge that there are competent grounds for the proceeding, and the petition must be full and positive and be drawn in such manner that perjury may be assigned thereon if any material allegation contained therein is false. *People* v. *Union Elevated Railway Co.* 263 Ill. 32; *People* v. *Roberts,* 279 id. 540; *People* v. *Graham,* 301 id. 446.

Apparently a rule *nisi* was entered in this case. At any rate, affidavits were filed in the case by appellees for the purpose of showing cause why the information should not be filed. The affidavit of P. H. Hellyer, county superintendent of schools, is to the effect that he posted ten notices of the election. The affidavit of C. L. Swedell, one of the respondents, states that the village of Table Grove is the center of the population of the community high school district; that all the lands and the territory are accessible to the village; that the part of the district in McDonough

county two miles wide and running west five miles is accessible to the village, and the public highways of said part are among the best highways leading into the village; that no part is cut off or separated by a creek or river which during flood times would make it impossible for the inhabitants living beyond the creek or river to reach the village by public highway. There was a plat of the alleged high school district annexed to the petition, and appellees filed a map, in colors, of the territory in question and of three surrounding high school districts, the south one of which was Vermont Community High School District, the east one of which was Ipava Community High School District, and the northwest one of which was Adair Community High School District; that there is no non-high-school territory between the district in question and the other high school districts, except a strip of land a half mile north and south by two miles east and west, which lies about the center of the border line of the Vermont High School District and Table Grove district. There was also an affidavit of Hellyer that elections for the organization of the districts of Table Grove, Ipava and Vermont were all held the same day, and affidavits of Swedell and Rush Keating that 106 women and 167 men voted at the Table Grove election and that there were only 29 votes polled against it. The plat shows that the distance from the community center of the Table Grove district to the northeast corner thereof does not exceed six and one-half or seven miles and that the distance to the extreme southwest part of the district does not exceed six and one-half miles, and that these two corners of the district are the farthest points from the center. The court refused leave to file the information and dismissed the petition at the costs of the relator.

It appears from the record that the court denied leave to file the information upon the ground that all defects in the proceeding to organize the district were cured by the validating act of May 10, 1921, (Laws of 1921, p. 797,)

except as to appellant's contention that the school center was not reasonably accessible to all the pupils of the district, and also held that the allegations of the petition were not sufficiently specific to show that the district violated appellant's constitutional rights. He concedes that the court properly held that all defects were cured by the validating act except the constitutional question, under the holding of *People* v. *Opie,* 301 Ill. 11, but insists also that that decision is wrong and should not be followed. That decision has been repeatedly followed and re-affirmed by this court in a number of cases, including the cases of *People* v. *Baird,* 307 Ill. 503, and *People* v. *Price,* 310 id. 66. It is now the settled law of this State, and we again affirm the constitutionality of the validating act.

The court properly ruled that the petition did not contain allegations sufficient to show that any of the pupils in the high school district could not conveniently travel from their homes to and from the school center in time to have the benefit of the high school. The petition is very general in this particular, simply stating that the community high school district is of great magnitude and extent, as shown by the map attached to it; that some parts of the territory are nine miles from the village of Table Grove, and that many high school students will be required to travel "nearly nine miles." The plat or map made a part of the petition does not confirm such statements, as is already shown, the greatest distance to any part of the district being not to exceed seven miles. This court has never ruled that the school center should be within walking distance from all parts of the district. We may take judicial notice of the fact that the distance of even nine miles may be traveled by high school students by the ordinary methods of travel employed or that may be employed in this State, and particularly where there is no condition of roads or streams or other conditions that interfere with travel. No such conditions are alleged in this petition. The word

"compact," as found in the provisions of the statute under which this community high school district was organized, as defined by the late decisions of this court, means concentrated, or close or near to a certain center.  The territory of a community high school district is compact and contiguous, in the constitutional sense, when it is so closely united and so nearly adjacent to the school building that all the children residing in the district may conveniently travel from their homes to the school building and return in a reasonable length of time and with a reasonable degree of comfort.  (*People* v. *Young,* 301 Ill. 67; *People* v. *Kirkham,* 301 id. 45; *People* v. *Cowen,* 306 id. 330; *People* v. *Crawford,* 310 id. 205.)  This definition was framed in view of the provisions of section 1 of article 8 of our constitution, providing that "the General Assembly shall provide a thorough and efficient system of free schools, whereby all the children of this State may receive a good common school education," and in view of the further fact that it has been the constant practice in this State to form public school districts so that all the pupils thereof could reach the school house from their homes while attending school.  The idea now crystallized and definitely established by our decisions is that parents shall not be compelled to board and lodge their children at the school centers and pay the expenses thereof from their own private purses while the children are attending school in their own public school districts, where the people of the district are burdened with all the costs and expenses of such schools by public taxation, when their children are in ordinary health and physical condition.

The court properly denied leave to file the information, and such order is affirmed.                    *Order affirmed.*